STATE ex rel. MINNESOTA TELEPHONE COMPANY v. CITY OF BRAINERD and Others.[1]

June 12, 1914.

Nos. 18,690—(18).

**Forfeiture of franchise — regulation by city.**

A grant of the right to construct and operate a telephone line within the city of Brainerd, and to use and occupy the streets of the city for that purpose, expressly provided that the line so constructed should be subject to the regulation and control of the city council, with authority to fix a maximum charge for services rendered, that it should be constructed under the direction and supervision of the city engineer with respect to the streets to be occupied, and that it should be completed within one year, in default of which the grant should be deemed abandoned.

It is *held*, that the construction of a line up to the city limits, thence extending it into the city over the poles and lines of another telephone company and into the exchange thereof, and under and by virtue of a contract with that company by which the control and operation of the line, and the right to fix charges for services was surrendered to it, in respect to which contract and surrender of control the city was not consulted and did not give its assent, was not a compliance with the franchise granted, and the city council was justified in declaring the grant abandoned and forfeited.

Upon the relation of the Minnesota Telephone Co. the district court for Crow Wing county issued its alternative writ of mandamus, directed to the city of Brainerd and its mayor and the members of its city council, requiring them to approve the plans submitted by relator for the construction of its telephone exchange within the city of Brainerd, or to designate such other streets and alleys for the use of petitioner in the construction of its telephone exchange as their judgment might direct, not destructive, however, of the rights of relator under its Ordinance No. 208, or show cause why they had not done so. The matter was heard upon certain stipulated facts by Mc-

[1] Reported in 147 N. W. 712.

Clenahan, J., who made findings and quashed the writ. From the judgment entered pursuant to the order for judgment, relator appealed. Affirmed.

*Alderman & Clark, Harlan P. Roberts* and *C. B. Randall,* for appellant.

*F. E. Ebner,* for respondents.

BROWN, C. J.

This is a proceeding by mandamus to compel the city council of the city of Brainerd to approve certain plans adopted by relator for the establishment of a local telephone exchange within the city, and to designate the streets to be occupied by relator for that purpose. The city answered, denying the existence of any right or franchise in relator to establish the proposed exchange within the city, or to use therefor any of its public streets. The cause was submitted to the court below upon the pleadings and an agreed statement of the facts, which are not in dispute. Judgment was ordered and entered for respondent and relator appealed.

The facts are as follows: On October 1, 1906, the city council duly enacted an ordinance, designated in the record as Ordinance No. 208, in and by which there was granted to Horace F. Mann the franchise, right and privilege, subject to the conditions imposed, to construct and operate a telephone line within the city, and the right to occupy the streets of the city was granted for that purpose. Section 3 of the ordinance provided that in consideration of the privilege so granted, and before the exercise thereof, Mann should pay to the city the sum of $300; "provided that if [the grantee] shall run but a single line into said city, and make but a single connection therefrom, he shall not be compelled or called upon to pay said sum of $300, or any part thereof except $25, until he shall desire to establish and maintain additional telephones," when, as a condition to his right to do so, the balance of the payment, or $275 should be made. Section 2 provided that the construction, maintenance and operation of the telephone exchange, and all matters incident thereto, so far as related to the occupancy and use of the streets, should be under the

direction and supervision of the city engineer; and by section 4, the right to regulate and control the operation of the line was reserved to the city council. Section 5 provided: "If the said Horace F. Mann, his heirs or assigns, shall fail to establish at least a single line into said city within one year from the publication of this ordinance, or shall fail to operate such exchange during a period of one year, after establishment thereof, such failure shall be deemed and taken to be abandonment of all rights and privileges hereunder, and all the rights and privileges hereby granted shall thereupon cease."

Section 6 required of Mann a written acceptance of the ordinance, the same to be filed with the city clerk within ten days after the first publication thereof. The ordinance was so published on October 6, 1906, and within 10 days thereafter Mann filed a proper acceptance, and paid to the city the sum of $25, as required by section 3, thus indicating an intention on his part to construct a single line into the city. Thereafter in June, 1907, Mann constructed a telephone line extending from Midland, in the county of Crow Wing, to the city of Brainerd, connecting the same at the city limits with a line owned and operated by another telephone company, namely, the Northwestern Co., which was then operating a telephone exchange in said city. At the point stated the wire of the Mann line was strung upon poles of the Northwestern Co. within the city, and later joined to the wires of that company, thus connecting and ending with its exchange. Subsequently Mann constructed other lines up to the city limits, which were connected in the same manner with the line and exchange of the Northwestern Co. No use of the streets for the Mann line was demanded or exercised under the franchise, nor was the city or any of its officers consulted in reference to the connection with the Northwestern line. That connection was made and the poles of that company used under a contract between Mann or relator and that company. That contract transferred and granted the Northwestern Co. the control and operation of the Mann line and also fixed and defined the tolls and charges to be made for the use of the same. It also provided for an apportionment of such tolls between the parties to the agreement and the Northwestern Co. reserved the

right to modify the same as occasion might require. The term of this contract extended until the year 1912, and during all that time the Mann line was operated by the Northwestern Co. within the city; for so far as the record discloses Mann neither exercised nor claimed any control of or the management thereof. Thereafter Mann assigned all his rights in and to the privileges granted by the ordinances to relator herein, a corporation, which had, as we understand, succeeded to the ownership of the Mann lines outside the city. The relator, on August 18, 1913, notified the city of its ownership of the Mann franchise, paid to the city the sum of $275, (the payment required by section 3 of the ordinance) submitted plans for the installation of an independent exchange within the city, and demanded that such plans be approved, and that a designation of the streets for occupancy by relator for that purpose be made. The city council refused to adopt or approve the plans, or to designate streets for the use of relator, and on October 6, 1913, duly enacted a resolution, declaring all rights and privileges granted by the ordinance to Mann annulled and terminated, on the ground that the latter had not complied with the terms of the ordinance, in that he had failed within a year from the acceptance thereof to establish a telephone line within the city as required. This proceeding was commenced on October 9, three days after the passage of that resolution. Upon these facts the trial court quashed the alternative writ and ordered judgment for respondent, to the effect that relator was not entitled to the relief demanded. A careful examination of the record leads us to the same conclusion.

The only question involved is whether a telephone line was constructed under the Mann grant within the time prescribed by the ordinance or at all. On the facts stated it seems clear that the question must be answered in the negative. The grant to Mann provided for the construction of a single line into the city within one year from the date of the acceptance thereof. The line so provided for was to be constructed under the supervision and direction of the city engineer, and control of the operation thereof, including fixing maximum tolls to be charged for services rendered, was reserved to the city council. An independent telephone was in the contemplation

of the parties, and there could be no compliance with the requirements of the grant by the adoption of an existing telephone line of some other telephone company, coupled with a surrender of the right of control to that company, a right that was reserved to the city under the grant. Instead of constructing such a line as was contemplated, the Mann system was brought up to the city limits and then, under an arrangement with the existing concern, the line was extended into the city over the poles thereof and into its exchange, leaving the operation thereof wholly within the control of the other company. Just what rights that company had within the city, and whether differing from the Mann grant, does not appear. But it does appear that no line was operated under the latter grant within the city. The city was not consulted in the matter of the contract between the two companies and in no manner acquiesced therein. It has no control over the Mann line outside the city, and could make no order in respect to the operation thereof. And further, Mann by the contract with the Northwestern Co. placed it beyond his power to comply with any regulations imposed upon him by the grant, for he had turned his line over to the Northwestern Co. The Mann grant prescribed the terms and conditions upon which Mann might enter the city, and by that the rights of the parties must be measured, and not by the contract between the two telephone companies. It follows necessarily, as we view the matter, that the ordinance requiring an independent line into the city within one year from the acceptance thereof was not complied with, and the city had the right, under section five, to treat the franchise as abandoned. In harmony with the conclusion of the learned trial judge, we so hold.

Judgment affirmed.